## OSTERMOOR & CO., Inc., v. FEDERAL TRADE COMMISSION.

(Circuit Court of Appeals, Second Circuit. January 10, 1927.)

No. 67.

.1. Trade-marks and trade-names and unfair competition ⟨⟩68—Slight pictorial exaggeration of qualities of article is not misrepresentation or unfair competition (Federal Trade Commission Act, § 5 [Comp. St. § 8836e]).

The slightest pictorial exaggeration of articles cannot be deemed to be either a misrepresentation or unfair method of competition, within Federal Trade Commission Act, § 5 (Comp. St. § 8836e).

2. Trade-marks and trade-names and unfair competition ⟨⟩80½, New, vol. 8A Key-No. Series—Federal Trade Commission's cease and desist order held erroneous, as attempting to prohibit slight pictorial exaggeration.

Cease and desist order of Federal Trade Commission *held* erroneous, in attempting to prohibit pictorial representation of any exaggeration of expansion which would take place if completed mattress was partly left open.

3. Trade-marks and trade-names and unfair competition ⟨⟩68—Pictorial representations of Ostermoor mattress, exaggerated expansion in case of completed mattress left open, held not unfair competition (Federal Trade Commission Act, § 5 [Comp. St. § 8836e]).

Pictorial representation of process of manufacturing Ostermoor mattresses, showing exaggerated expansion in case of completed mattress being partly left open, *held* not to constitute unfair competition, within Federal Trade Commission Act, § 5 (Comp. St. § 8836e).

4. Trade-marks and trade-names and unfair competition ⟨⟩80½, New, vol. 8A Key-No. Series—Former owner, having transferred business to corporation, held improperly joined in proceedings charging unfair competition (Federal Trade Commission Act, § 5 [Comp. St. § 8836e]).

Former owner, who had, before suit was instituted, transferred to corporation his former business, *held* improperly made party to proceedings to enjoin unfair methods of competition, within Federal Trade Commission Act, § 5 (Comp. St. § 8836e), although owning practically all of capital stock.

Petition to Review Order of the Federal Trade Commission.

Petition by Ostermoor & Co., Inc., to review a cease and desist order of the Federal Trade Commission. Order of Commission annulled.

C. C. Cousins, of New York City, for petitioners.

Bayard T. Hainer, Chief Counsel, Federal Trade Commission, Adrien F. Busick, Asst. Chief Counsel, and Richard P. Whiteley, all of Washington, D. C., for respondent.

Before HOUGH, MANTON, and MACK, Circuit Judges.

MACK, Circuit Judge. The amended complaint filed against petitioners in April, 1924, charges as unfair methods of competition, within section 5 of the Federal Trade Commission Act (Comp. St. § 8836e), that they had published throughout the country false and deceptive advertisements, consisting principally of pictorial representations of mattresses. We shall assume the complaint further charges, as respondent asserts in its brief, that the misrepresentation is in "pictorially showing that petitioners' mattresses are constructed of superimposed layers of cotton felt, or bats of such number and thickness and resilience that, if a completed mattress of from four to six inches in thickness were opened up at one end by ripping or removing the ticking or covering thereon, said layers of cotton felt would expand to the extent of 35 inches or more, and that the said expansion of such opened-up end would be at least six or seven times the thickness of the inclosed end of said mattress."

The Commission found that, when opened at one end in the manner above described, the expansion was from 3 to 6 inches, instead of, as the pictures indicated, 35 inches or more; that over $4,000,000 had been expended by petitioner and its predecessors in advertising; that a substantial number of the public had been induced to buy petitioners' mattress in preference to that of other manufacturers, who do not falsely represent their mattress to possess the expansion, resilience or thickness of filling claimed by petitioners for the Ostermoor.

The order to cease and desist in substance forbade the pictorial representation of any exaggeration of the expansion which takes place if a completed mattress were partly ripped open; the essential basis of the order was the pictures in use as trade-marks for over thirty years. These pictures and their origin are described in the findings of the Commission as follows:

"In 1895, respondent Ames caused to be

constructed a model of a mattress filled with layers of cotton, with the cover open and the filling exposed at one end, said exposed end and the cotton filling thereof being manipulated so as to greatly expand such cotton filling, between the bats or layers of which supports were placed to hold the filling in said expanded position. Photographs were then taken of this model, and, guided by said photographs and by drawings and instructions from respondents, a picture of a mattress was produced by an artist, showing the mattress inclosed at one end and opened and greatly expanded at the other end. This exaggerated picture was incorporated.by respondents in the several trade-marks adopted by them. About January 15, 1895, respondents began using the picturizations or depictions of open-end mattresses· as trade-marks, and attached to all mattresses manufactured and sold by them a label or brand bearing pictorial representations of an Ostermoor mattress *in the later processes of construction.* The device upon this label is a circle set within a square and quartered by lines of diameter intersecting at the center. In one corner is a mattress cover upon which has been placed several layers or bats of cotton felt; a woman is in the act of adding a final layer to the mattress filling. In the second quarter of the label is shown a mattress with upper portion of the cover drawn in part over the filling, so as to restrain one end; at the other end the mattress filling is shown as flaring widely, showing eight layers or bats. In the third quarter a woman is represented as in the act of fastening the edges of the cover together; she has progressed in the process some inches from the end of the mattress, and the filling has flared or expanded toward the other end, so as to show the bats or layers of filler rising to about the height of the woman's head, although the support of the mattress reaches only to a point below the pictured woman's hip, and the inclosed top to about her hip. In the fourth quarter is shown a mattress in sections, the smaller section completed and tufted, while in the larger section the filling for a few inches is restrained by the cover, and for the rest of the distance it is exposed, showing a flare similar to that shown in the adjacent quarter. Following one of the diameter lines which divide the circle is the word 'Ostermoor,' and following the other diameter line is the legend 'Hand-Laid Filling,' thus giving the impression that the representations in series upon the label were of *the final*

*processes* of Ostermoor mattress construction."

The misrepresentation is found as follows:

"Such pictorial representations of the bed mattresses of respondents so set forth upon such brands or labels indicate great elasticity and resiliency, and an expansion of the filling when unrestrained to several times the thickness of such filling when bound in such mattresses; such filling when flared out or expanded being at least six or seven times as thick at the extreme free or open end as in the covered portion of the mattress. The thickness of the completed stock mattresses of respondent is from about four inches to about 6 inches, while the flaring free ends are of such proportion that they plainly indicate the thickness of the cotton filling when freed from restraint to be at least 35 or 40 inches."

"The pictorial representations of Ostermoor mattresses, which appear upon the labels and in the advertising of respondents, grossly exaggerate the expansion which actually occurs in respondents' mattress filling freed at one end from restraint. As a matter of fact, the filling of respondents' mattresses when unrestrained rises above the thickness of the mattress when restrained, or completed, only about 50 to 100 per cent., or from 3 to 6 inches, instead of 35 inches or more, as indicated in the aforesaid picturizations. Such pictorial representations used in the advertising of respondents and on the labels exaggerate the expansion of the filling of respondents' mattresses and imply a resiliency or elasticity far beyond the fact."

[1, 2] As pointed out by the dissenting Commissioner, Humphreys, even the slightest exaggeration, well within the limits of legitimate trade puffing, would fall under the Commission's condemnation. But the statutory power to prohibit unfair methods of competition cannot be stretched to this extent; the slightest pictorial exaggeration of the qualities of an article cannot be deemed to be either a misrepresentation or an unfair method of competition. The time-honored custom of at least merely slight puffing, unlike the clear misrepresentation of the character of goods, as in the Winsted Hosiery Company Case, 258 U. S. 483, 42 S. Ct. 384, 66 L. Ed. 729, has not come under a legal ban. See Federal Trade Commission v. Gratz, 253 U. S. 421, 40 S. Ct. 572, 64 L. Ed. 993, as to "unfair competition." Even if petitioner were properly found to have committed a wrong, the order here issued

must be deemed erroneous, in that it attempted to prohibit, not merely the wrongdoing, but likewise proper trade practices. [3] We cannot, however, concur in the interpretation of the pictorial representation upon which the order is based. As also pointed out by the dissenting Commissioner, and as indicated in the above quoted findings of the Commission, the pictures clearly assume to show the final stages in the construction of the mattress; the thickness and resiliency before compression and not afterwards; a mattress in process of manufacture, not one completed and, after some unknown time and unknown use, ripped open again. And there is no testimony that such a representation is a misrepresentation of the unfinished article, or of the materials or of the process of utilizing them in the manufacture of the mattress. Concededly it is an exaggeration of the actual condition; indeed, petitioner asserts that it is not and was not intended to be descriptive, but fanciful, and as such the subject-matter of valid trade-marks.

The only possible support in the record for the interpretation of the picture as a finished and partially reopened mattress, as charged in the complaint and as enjoined by the order, is the fact that in a 1913 cushion catalogue and in a mattress catalogue last printed in 1916, and abandoned since its last issuance in 1921, a year before corporate defendant's incorporation, and three years before the complaint was filed, the legend accompanying one of the pictures reads: "Showing the built-up Ostermoor sheets appearing from out a completely finished cushion, ripped open for inspection. Note resiliency of filling." No such legend accompanied any of the mattress pictures in this or other catalogue, or any picture, since 1921.

[4] Defendant Ames personally and trading as Ostermoor & Co. was improperly joined as a defendant; his old established business had been transferred to Ostermoor & Co., Inc., two years before complaint was filed; the fact that he owned practically all of the capital stock did not render him individually subject to the cease and desist order. The sole apparent purpose in making him a party defendant was to get the discontinued 1916 and earlier catalogues into the record as admissible in evidence against him.

It is unnecessary to determine many questions sought to be raised; among others, whether the proceeding is in the public interest, in the light of the fact that petitioner does less than 1 per cent. of the mattress and cushion business of the country, that hundreds of competitors use similar advertising pictures, that petitioner and its predecessors have established a high reputation, and have always fulfilled their guaranty to make good any complaints, or to what extent the use of otherwise valid trade-marks in unfair competition may be forbidden. The determination of validity or invalidity of the picture as a trade-mark, because fanciful or merely descriptive, is not within the jurisdiction of the Commission or of this court in this proceeding. The sole inquiry here is that of unfair competition against the public interest.

In our judgment, this pictorial representation of the process of manufacturing Ostermoor mattresses and of the materials used therein, even though exaggerated as to their characteristics, cannot deceive the average purchaser, and the record is practically bare of any evidence of actual reliance upon the puffing exaggeration of qualities. There is no basis for the finding that "substantial numbers of purchasers had been misled and deceived by the grossly exaggerated pictorial representation."

Finding no evidence of unfair competition, the order of the Commission is annulled.