## INTERNATIONAL PARTS CORPORATION v. FEDERAL TRADE COMMISSION.

### No. 7998.

Circuit Court of Appeals, Seventh Circuit.

Feb. 17, 1943.

Rehearing Denied March 22, 1943.

---

David Silbert, of Chicago, Ill., for petitioner.

Wm. T. Kelley and Joseph J. Smith, Jr., both of Washington, D. C., for respondent.

Before EVANS and MINTON, Circuit Judges, and LINDLEY, District Judge.

MINTON, Circuit Judge.

The petitioner, International Parts Corporation, seeks to review and set aside an order of the Federal Trade Commission ordering it to cease and desist from making certain representations concerning its products. The petitioner, an Illinois corporation with its place of business in Chicago, sells replacement auto parts at wholesale in interstate commerce. Its president is Mr. Sherman, who was formerly associated with his brother-in-law, Mr. Grawoig, in the same line of business. They did business through an Illinois corporation located in Chicago, known as the Universal Parts Company. Sherman and Grawoig had a disagreement which ended in a fist fight, and Sherman left Universal and started a rival business through the petitioner corporation.

Among the replacement parts sold by the petitioner in competition with Universal and many others were automobile mufflers. The petitioner did not manufacture the mufflers, but purchased them from a concern which manufactured them. In its advertising and sales literature, the petitioner stated:

"WARNING!
To Protect Yourself
Against
Leaking Carbon
Monoxide Gas
Be Sure
Your Muffler
Is Made With
Continuous
ELECTRIC–WELDED SEAMS
Throughout
. . . Not Locked, Crimped or Spot-
Welded

Your
Safeguard        INTERNATIONAL"
is An

The petitioner also represented that its mufflers were made with the

"Finest Quality Metallic Finish
Prevents Rust and Corrosion."

The Commission issued and served a complaint upon the petitioner in which it charged the petitioner with false and misleading representations concerning its mufflers in the following particulars:

(1) "Electric welded seams throughout —not locked, crimped or spot-welded."

(2) "Double shell construction for added strength and quiet operation, exclusive feature."

(3) "Finest quality, metallic finish prevents rust and corrosion."

(4) "They increase gas mileage."

(5) "Warning! To protect yourself against leaking carbon monoxide gas, be sure your muffler is made with continuous electric-welded seams throughout, not locked, crimped or spot-welded."

After a hearing, the Commission found that only the third and fifth specifications were false and misleading, and issued an order that the petitioner cease and desist from:

"1. Representing, directly or by implication, that the use on an automobile of a muffler having seams which are spot-welded, locked or crimped results in greater danger of carbon monoxide gas poisoning to the occupant of such automobile than does the use of a muffler having continuous electric-welded seams;

"2. Representing, through the use of the unqualified word 'Prevents,' or any

other unqualified word of similar import, or by any other means, that the finish on respondent's mufflers affords permanent protection against rust or corrosion."

The petitioner challenges the order on the grounds that the proceedings are not in the public interest, and that the order is not sustained by substantial evidence.

■ As to the question that has been raised that this proceeding is not in the public interest, the petitioner has cited Federal Trade Commission v. Klesner, 280 U.S. 19, 50 S.Ct. 1, 74 L.Ed. 138, 68 A.L.R. 838, and other cases. The Klesner case and the other cases cited by the petitioner seem to have been cases to settle only private controversies. While the case at bar may have started as a private controversy and led to the altercation between Sherman and Grawoig and was nurtured in the ill will that still continues, we think the case as presented by the Commission was more than a private controversy. The petitioner did a substantial business, competing in interstate commerce with several firms in the merchandising of an article produced by several different companies and widely used. If the petitioner's practices were fraudulent and of a misrepresentative character, it is apparent that quite a sizable portion of the business public might be affected. Under such circumstances, we think the Commission's finding of public interest is sustained by substantial evidence. Federal Trade Commission v. Royal Milling Co., 288 U.S. 212, 217, 53 S.Ct. 335, 77 L.Ed. 706; Dr. W. B. Caldwell, Inc., v. Federal Trade Commission, 7 Cir., 111 F.2d 889, 891; Consolidated Book Publishers, Inc., v. Federal Trade Commission, 7 Cir., 53 F.2d 942, 945.

Coming to the merits of the case, we now consider Paragraph 1 of the Commission's order. This paragraph, in effect, says that the petitioner's representations that a muffler with a continuous electric-welded seam is less likely to expose to the danger of carbon monoxide gas than one that is spot-welded, locked or crimped are false and misleading. No one testified to that effect. The only testimony we can find in the record on this point is that of Professor Pearl, a mechanical engineer, who qualified as an expert, and whose testimony is not challenged anywhere in the record. He was asked on direct examination:

Q. "Now, Professor, can you say that a locked, crimped or a spot welded seam is as leak proof as the seams you find on these exhibits (the continuous weld seams)?"

A. "I do not believe I would consider them as leak proof as a continuous weld."

This testimony is diametrically opposed to the Commission's order.

On cross-examination, Professor Pearl testified that there was no danger from carbon monoxide gas leaking from any muffler made by any of the various processes if made well, that is, made without defect. This testimony does not conflict with the testimony he gave on direct examination that a muffler with continuous electric-welded seams throughout is less likely to leak than one that is spot-welded, locked or crimped. It only confirms what would seem to us to be clear, namely, that a muffler perfectly made by either process will be free from leaks and therefore safe. This is not to say which of the processes of closing a seam on a muffler is the least likely to produce a leak.

■ The professor testified directly that the petitioner's product, which is a continuous electric-welded seam muffler, is the least likely to have a leak. The professor's opinion is not incredible, and coincides with our understanding of the relative value of these various processes of closing a seam. Certainly a weld all the way is more durable and less likely to leak than one that is welded only in spots. If it is good to weld it in spots, it would seem better to weld it all the way. Likewise, a fusion of the edges of the seams would seem less likely to leak than where the seams were mechanically pressed together and welded only in spots, or locked or crimped. This paragraph of the Commission's order is not supported by substantial evidence, and is contrary to the only evidence in the record. If the Commission should not credit the opinion of the expert, then there is no evidence on this point in the record and the Commission's order is still unsupported by any evidence.

■■ In Paragraph 2 of the Commission's order, the petitioner is ordered to cease and desist from representing that the finish on its mufflers *permanently* prevents rust or corrosion. The petitioner never represented that the finish on its

886

mufflers would prevent rust *permanently*. The word *"permanently"* was interpolated by the Commission. The Commission's finding is that, "While the finish may serve to prevent rust and corrosion for a *limited period of time*, it does not afford permanent protection against such conditions." (Our emphasis.) The petitioner never said that it did afford permanent protection against such conditions. The petitioner said only that the finish prevents rust and corrosion. The Commission admits that the finish does prevent rust and corrosion for a period of time, but states the petitioner is misrepresenting the facts when it says the finish will prevent rust and corrosion *permanently*. The Commission cannot interpolate into the petitioner's representations words not there, and then find the petitioner guilty of misrepresentation because the petitioner's product does not meet the Commission's revised representations. The word "prevents" is a word of common understanding, and the common acceptation of this word carries no connotation of permanency. The petitioner will be presumed to have used the word in its ordinary and commonly accepted understanding, in the absence of any showing to the contrary. Without the word "permanently" interpolated, there is no misrepresentation. The word "permanently" is the Commission's word, not the petitioner's. The petitioner answers for its own representations, and not those of the Commission. The evidence does not support Paragraph 2 of the order.

Since we find no substantial evidence to support either paragraph, the order is vacated.