### SUMMERS v. McDERMOTT et al.
### No. 8274.

Circuit Court of Appeals, Third Circuit.
Argued July 14, 1943.
Decided Oct. 27, 1943.

Gerald A. Gleeson, of Philadelphia, Pa. (Walter S. Keown, of Camden, N. J., of counsel), for appellant.

L. Scott Cherchesky, of Camden, N. J., for appellee.

Before GOODRICH and McLAUGHLIN, Circuit Judges, and KIRKPATRICK, District Judge.

McLAUGHLIN, Circuit Judge.

This is a conspiracy action. Plaintiff had been a stockholder in a brewery corporation. The defendants are McDermott, the president, and Penza, Jr., treasurer of the concern. The other two defendants named, were eliminated, on motion, prior to trial. Plaintiff contends that the defendants wrongfully deprived him of his stock in the company. In the District Court, at the end of the plaintiff's case, there was a direction of verdict in favor of the defendants.

It is urged that the evidence raised a jury question. A careful study of the record fails to substantiate this. The primary point, urged by the appellant, concerns an agreement of October 1, 1934, whereby the defendant, Penza, Jr., agreed to loan $5,000 to the company for a year in consideration of the plaintiff and other stockholders securing the loan, by assigning their stock to him for the year of the agreement or until the $5,000 was repaid Penza, Jr. Five stockholders were named as parties of the second part, including one Isabel A. Lenning. Mrs. Lenning refused to sign the agreement. The four stockholders, including the plaintiff, who did sign as parties of the second part, agreed "together and singularly" to secure the loan. The argument is made on behalf of the appellant that there is no evidence that he knew of Mrs. Lenning's refusal. There is an inference, from his own testimony, that he did. However, whether he did or not, under the quoted language, he committed himself "singularly" to performance of his share of the agreement.

There were no hidden charms either as to the agreement or the circumstances giving rise to it. The plaintiff readily admitted: That the brewery needed funds at the time; that he agreed with Penza, Jr., that the latter was to get $5,000 for the brewery and if the money was not paid back within one year that the stock he put out as a pledge or "to insure somebody getting their money back or his (Penza, Jr.) getting his money back" that his stock "could be sold to make the $5,000 good;" that he saw Penza, Jr.'s name in the agreement; that he read the paper over and was given a copy of it. Under the agreement, the responsibility of the stockholder parties of the second part was to be apportioned according to the amount of stock as security.

Appellant further stresses that, for a year or more after the expiration of the

agreement, the defendants, time and again told him he had nothing to worry about and that everything would be all right with his stock. Neither during the year of the agreement nor at any time thereafter, did the appellant ever tender his proportionate share of the $5,000. loan. There is some indication that after the expiration of the agreement such suggestion was made to him by the defendant, Penza, Jr., and that he declined it. At the oral argument in this Court, counsel for the appellees stated that if such tender were to be made even now, the stock would be gladly returned to the appellant. The testimony forcibly points out that plaintiff was never prevented from examining the books of the corporation or from taking any other proper steps to ascertain the true status of this loan.

Under the agreement, the stock of the appellant and all the other stockholder parties, was to be assigned to the defendant, Penza, Jr., or his heirs or assigns "to have and to hold with full power to vote the said stock at any stockholders meeting, for the period of a year or until the above mentioned Five Thousand Dollars ($5,000) has been repaid to the party of the first part with interest at the rate of six percent (6%) per annum." On August 26, 1936, almost a year after the agreement had expired, the appellant's shares were transferred to Penza, Jr. on the books of the company. There is no evidence that those shares had been sold by Penza, Jr., and bought in by him at such sale. There is nothing to justify the insinuation of any unwarranted conversion of the shares by Penza, Jr. Such evidence as there is indicates that Penza, Jr., finally had the shares assigned to him and is voting them in accordance with the agreement. That Penza, Jr., even now, is still willing and able to turn the shares back to the appellant if the latter will pay his proportionate share of the $5,000, is quite in line with this.

The complaint charged that the defendants caused a certain chattel mortgage to be entered into by the corporation for the purpose of showing a wrong financial status of the company. Plaintiff as a witness, emphatically denies this. There is nothing else in connection with that mortgage showing plaintiff to have been wronged by the defendants. He testified regarding it: that creditors were pressing; bankruptcy was threatened and that the mortgage was drawn to hold off creditors.

It is charged that the Trial Judge erred in excluding certain checks as exhibits. The transcript shows the Court to have correctly so ruled. The drawer of the checks was not produced nor were the signatures on the instruments identified.

The rather voluminous record in this case has been carefully scrutinized to see if there was any evidence of tortious conduct by either of the defendants that would justify the case being presented to the jury. No such evidence appears.

The judgment of the District Court will be affirmed.