**WHEATLAND ELECTRIC CO-OPERATIVE, Inc.**

v.

**NATIONAL LABOR RELATIONS BOARD.**

No. 4620.

United States Court of Appeals
Tenth Circuit.

Dec. 29, 1953.

Karl R. Ross, Colorado Springs, Colo. (David P. Strickler, Colorado Springs, Colo., James W. Wallace, D. B. Lang, Scott City, Kan., and P. C. Frazee, Syracuse, Kan., were with him on the brief), for petitioner.

Harry Irwig, Washington, D. C. (George J. Bott, David P. Findling, A. Norman Somers, Bernard Dunau and Jean Engstrom, Washington, D. C., were with him on the brief), for respondent.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

This case is before us upon the petition of Wheatland Electric Cooperative, Inc., filed under Section 10(e) and (f) of the National Labor Relations Act to review and set aside an order of the National Labor Relations Board issued against it on February 6, 1953, pursuant to Section 10(c) of the Act.[1] In its answer to the petition the Board asks that its order be enforced. The sole question in the case is whether in the light of the entire record the findings of the Board are sustained by substantial evidence.

Based upon the intermediary report the Board found that Wheatland had engaged in unfair labor practices in violation of Section 8(a)(1, 3) and (5) of the Act by refusing to bargain collectively with International Union of Operating Engineers, Local 646, A.F.L., by discouraging membership in the Union and

[1]. 29 U.S.C.A. § 151 et seq.

by unlawfully discharging eight employees for engaging in a strike and by unlawfully interfering with the rights of its employees to join the Union. Based on these findings, it issued its cease and desist order and required Wheatland to take the following affirmative actions: to post notices; upon request, bargain collectively with the Union representatives; offer reemployment to the eight employees named in the order without prejudice to their seniority or other rights; dismiss, if necessary, any employees hired after September 12, 1951, and make the discharged employees whole in the manner set out in the intermediary report for loss of any pay suffered by reason of the discrimination against them and make available its records to the Board showing compliance with its order.

The following narrative statement of the facts is warranted by the extensive record in the case. A movement to organize the employees into a labor union began in late 1950. On January 12, 1951, M. V. Johnson, a representative of the Operating Engineer's Union, A.F.L., convened a meeting of the employees for the purpose of organizing them. Between eighteen and twenty of the employees attended. All but two of those present applied for membership in the Union. The following day Johnson called on Frank C. Arthur, Wheatland's Manager, and asked him to recognize the Union. Arthur stated that he would refer the matter to his lawyer, P. C. Frazee. Thereafter Johnson filed with the Board a petition for certification of the Union as representative, notifying Frazee of this fact. The Union's continuing efforts to secure voluntary recognition failed and Wheatland also refused to agree to a consent election. The Board directed an election to be held. Two days before the election held on June 1, 1951, Wheatland granted the employees an increase in holiday pay rate from time and one-half to double time. The election was won by the Union, fourteen of the eighteen partici-

pating employees voting for the Union. The result of the election was formally certified on June 11. The day after the election, Union Representative Johnson wrote Manager Arthur and asked him to meet with the Union to negotiate a contract. Arthur refused to discuss a contract, stating that he would not bargain unless it were determined that Halfman, the warehouse clerk and storekeeper, and employee Robertson, a meter repairman, be excluded from the appropriate unit. Johnson immediately filed a charge with the Board, complaining that Wheatland was refusing to bargain. At a meeting on July 13, conducted by William Guerin, Field Examiner of the Board, held at Manager Arthur's suggestion at Wichita, 250 miles from Scott City where Wheatland was located, Johnson agreed to withdraw the charge in return for petitioner's promises by Attorney Frazee and Manager Arthur that they would bargain. At that time the Union submitted its proposed contract to Frazee and Arthur and in a few days thereafter the unfair labor practices charge was withdrawn.

On July 23 a bargaining conference was held in Syracuse, Kansas. Union Representative Johnson and employees, Clint Clark and Red Adams, represented the Union. Frazee, petitioner's attorney, and Frank Crouch, Vice President and Member of petitioner's Board of Directors, appeared for petitioner. Although Frazee had had the contract for more than a week, he had not studied it. Both he and Crouch stated they had no authority to enter into any agreement binding the company and could speak only as individuals. Manager Arthur, who testified that he had been prepared to discuss the Union's suggestions and make counterproposals, did not come to the meeting. Nothing worthwhile was accomplished at this meeting. No further meeting was held until three weeks later, on August 14, when at Frazee's invitation Union representatives met with petitioner's nine-member Board of Trustees at their regular monthly meeting.

Union representatives were kept waiting for about three hours. They were then admitted to the meeting, at which Manager Arthur and Attorney Frazee and about eight trustees were present. The trustees had not read or discussed the Union's proposal before the meeting and accordingly the two and one-half hours spent in the conference room were used to familiarize them with the Union's suggestions and in summarizing the July 13 discussion. Manager Arthur renewed the controversy over the status of Halfman and Robertson and continued to press it, even after Frazee, the Attorney, advised that Halfman had been specifically included by the Board within the unit. The trustees also stated that all employees should be free to bargain individually and directly with the management, rather than through the union. The trustees appointed Manager Arthur and Attorney Frazee to meet the following day in Syracuse with Union representative Johnson, and employees, Gregory and McGonigle. Arthur failed to show up. Vice President Crouch appeared instead and, while he took part in the meeting, he made it clear that he could only give his personal views and that the trustees in fact disagreed with him on most issues. Not much was accomplished at this meeting. There is evidence warranting the statement that little disposition was evinced to reach an agreement. At one point Frazee remarked, "All I am obligated to do is to meet with you." At another, Crouch advised employee Gregory that if he did not like his job he should quit. Frazee promised to submit counterproposals to the Union but never did so.

On August 15 Frazee invited Union Representative Johnson to address a meeting of petitioner's membership to be held the next week. Johnson refused to do so on the ground that nothing constructive could be accomplished at so large a gathering. Petitioner's officials would not commit themselves to another meeting date. Johnson asked for help from the Federal Mediation and Conciliation Service. Its efforts to set up conferences on August 29 and September 11 failed because Wheatland's representatives were not available.

As a result of all these conferences, the Trial Examiner found, and there is evidence to substantiate the finding, that Wheatland had accepted without reservation only the recognition clause in the contract; that the Union had made concessions to Wheatland's demands on nine contractual items, but that as to these concessions Frazee had avoided making any commitments on behalf of Wheatland, and there is no evidence of final Board of Trustee action of approval as to any of them. The evidence also shows in accordance with findings of the Trial Examiner that Wheatland neither accepted nor made counterproposals to the Union's overtures with regard to overtime pay, walkouts, standby time, arbitration of grievances, holidays, supply of protective equipment, or benefits for accident, sickness and death.

Johnson, having failed in his personal efforts to procure a contract, called upon the Federal Mediation and Conciliation Commission to attempt to get the parties together. But the efforts of the Commissioner to set up conferences on August 29 and September 11 were unavailing because of previous commitments of Wheatland's representatives.

Late on September 11, the Union employees, feeling that no substantial progress had been made in reaching an agreement, and since no further bargaining conferences had been set up, voted to strike in protest against the alleged refusal of Wheatland to bargain in good faith. The strike commenced shortly after midnight September 12 and the strikers conducted peaceful picketing at the two Scott City plants until the strike ended on September 22. On that date the strikers made an unconditional offer to return to work. On September 13 and 14 the strikers had been handed "separation notices" and final pay checks. The testimony re-

vealed these notices constituted an actual discharge. On September 18 Wheatland replaced the strikers with new or promoted employees, increasing the hourly rate for linemen from $1.10 and $1.25 an hour to $1.38 and new operators from $1.10 to $1.29 an hour.

Federal Mediation and Conciliation Service efforts to bring the parties together on September 14 were unsuccessful. At the suggestion of the Commissioner, the Union revised its contract to be presented at an arranged conference on September 22. However, at that conference Frazee indicated he was doubtful that he was obligated to bargain with the Union at that point because the Union no longer represented a majority of the employees, and under the circumstances the Union representatives considered it was useless to submit the new proposals.

Thereafter on October 3 the unfair labor practices charge was filed. As a result of the hearing thereon further negotiations were suggested, but due to commitments of both Union and Wheatland, a conference could not be arranged until November 8, 1951, which was attended by Johnson for the Union, and Frazee and Arthur for Wheatland, and the Conciliation Commissioner. The Trial Examiner found that nothing was accomplished there and the evidence shows discussions were commencing again from the beginning of the contract, but that no commitments were made, and that the Union conceded Wheatland's demands regarding work stoppage. The meeting ended when the Commissioner had to catch a train and there have been no further conferences since that date and none of the strikers have been reinstated.

■■ Merely going through the formality of bargaining does not constitute compliance with the requirement of the Act. There must be good faith bargaining with a sincere and genuine effort to reach an agreement. If after such bargaining no agreement is reached, there is no violation. What constitutes good faith bargaining is not always easy to say from a record. The yardstick by which the conduct of parties is to be governed was well stated in National Labor Relations Board v. Reed and Prince Manufacturing Company, 1 Cir., 205 F.2d 131, 134, as follows: "In such a case the question is whether it is to be inferred from the totality of the employer's conduct that he went through the motions of negotiation as an elaborate pretense with no sincere desire to reach an agreement if possible, or that it bargained in good faith but was unable to arrive at an acceptable agreement with the union. Particularly in this area of mixed fact and law, a court will not lightly disregard the over-all appraisal of the situation by the Labor Board * * *."

■ Gauged by this yardstick, we think the record amply sustains the finding that Wheatland refused to bargain in good faith and that there was no intent on its part to make a sincere effort to reach an agreement. Only a few illustrations are necessary to support this conclusion. Thus while the Union representative made concessions on nine proposals, Wheatland refused to accept or reject these concessions; although invited to make counterproposals, none were made or offered. The attitude of Wheatland is best illustrated by Attorney Frazee's statement, "All I am obligated to do is to meet with you." At one time during the meeting, Frazee read to the Union representatives an article from the United States News and World Report concerning high wages paid Union officials. Throughout the negotiations Wheatland's representatives and members and individual trustees attending the conferences made it clear that their comments were merely their individual opinions. Other acts and conduct set out in the statement of fact, which in the interest of brevity will not be repeated, lend further support to this conclusion. The contention that we are dealing with a small rural organization composed of farmers, unlearned in

the law, lacks conviction. Business men were at the head of the organization. They were represented by able counsel at all stages of the proceedings, who knew the requirements of the law.

While Wheatland was not required to make any concessions on any specific issue or adopt any special position, it was obligated to make some reasonable effort in some direction to compose its differences with the Union, if Section 8(a)(5) is to have any force or effect.[2]

Wheatland's bad faith attitude toward the bargaining process is further demonstrated by its unilateral action in hiring new employees and promoting old employees at increased wages to replace striking employees; such action has the effect of undermining the representative status and prestige of the bargaining agent, and is illegal under the Act when bad faith bargaining is established. See National Labor Relations Board v. Reed & Prince Manufacturing Co., supra. Bad faith is further demonstrated by Attorney Frazee's refusal to bargain at the September 22 conference on the ground that the Union, after the strike, no longer represented a majority of the employees. See Medo Photo Supply Corp. v. National Labor Relations Board, 321 U.S. 678, 64 S.Ct. 830, 88 L. Ed. 1007.

Since the evidence sustains the finding that Wheatland failed to bargain in good faith with the Union, the strike of the employees called in protest of the conduct of Wheatland was an unfair labor practice strike and not an economic one and the striking employees were entitled to unconditional reinstatement irrespective of whether their positions had been filled in the interim.[3]

The order of the Board will be enforced.

---

2. National Labor Relations Board v. Reed & Prince Mfg. Co., 1 Cir., 205 F.2d 131; National Labor Relations Board v. O'Keefe & Merritt Mfg. Co., 9 Cir., 178 F.2d 445; National Labor Relations Board v. Woodruff, 5 Cir., 193 F.2d 641.

3. National Labor Relations Board v. Kobritz, 1 Cir., 193 F.2d 8; National Labor Relations Board v. Bradley Washfountain Co., 7 Cir., 192 F.2d 144.