**PEP BOYS—MANNY, MOE & JACK, Inc., v. FEDERAL TRADE COMMISSION.**

No. 7613.

Circuit Court of Appeals, Third Circuit.

June 30, 1941.

Edward A. Kelly, of Philadelphia, Pa. (Edward A. Kelly, of Philadelphia, Pa., on the brief), for petitioner.

Martin A. Morrison, of Washington, D. C. (W. T. Kelley, Chief Counsel, Federal Trade Commission, and Carrel F. Rhodes and James W. Nichol, Sp. Attys., all of Washington, D. C., on the brief), for respondent.

Before MARIS and JONES, Circuit Judges, and WALKER, District Judge.

WALKER, District Judge.

The petitioner[1] is charged with unfair methods of competition in commerce and unfair or deceptive acts or practices in

---

[1] Pep Boys—Manny, Moe and Jack, Inc., hereinafter referred to as Petitioner or Pep Boys.

commerce in violation of the Federal Trade Commission Act.[2] It is a Pennsylvania corporation and for a number of years prior to the cease and desist order of the Federal Trade Commission,[3] it engaged in the sale of radios, radio tubes, other radio parts and automobile accessories through 52 stores operated by it and located in seven of the states of the United States and in the District of Columbia.

In the conduct of its business petitioner adopted certain brands for a number of its products and in connection therewith obtained charters of incorporation under different titles, included among which was Windsor-Lloyd Products Inc. The Windsor-Lloyd Products Inc., was incorporated under the laws of the State of Delaware and thereafter caused to be registered in the United States Patent Office a certain trade mark, to wit, "Remington" and in its statement to the United States Patent Office it said that the trade mark had been adopted and used for radio receiving sets and radio tubes, electrical appliances, machines and supplies. Petitioner entered into contracts with manufacturing companies for the manufacture of radio receiving sets to be sold exclusively by it, and to said sets it attached name plates which bore the name "Remington", the name or part of the name of a number of corporations transacting and doing business in the United States which are and have been favorably known to the purchasing public and which are and have been long established in various industries. Some of these, and we need name only Remington Rand, Inc., and Remington Arms, use the name "Remington" as a trade name, mark or brand for the products manufactured and sold by them.

The aforesaid radios were transported to the purchasers thereof in states other than the state where the shipment originated, and in the course and conduct of said business, petitioner was in substantial competition with corporations, firms and individuals engaged in the sale and transportation of radios in commerce among and between the various states of the United States and in the District of Columbia.

The Commission concluded that the said acts and practices of Pep Boys were to the prejudice and injury of the public and petitioner's competitors and constituted unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce within the intent and meaning of the Federal Trade Commission Act.

In 1914 the state of affairs with regard to the combatting of unlawful restraint of trade was unsatisfactory, and Congress yielding to continual demands offered as remedies the Federal Trade Commission Act[4] and the Clayton Act.[5] The procedure in the Federal Trade Commission Act is prescribed in the public interest as distinguished from provisions intended to afford remedies to private persons.[6] As enacted, Section 5[7] provided: "Unfair methods of competition in commerce * * * are hereby declared unlawful". This expression, new in the law, was intended to have a broader meaning than "unfair competition" and it was to be determined in particular instances upon evidence in the light of particular competitive conditions and of what is found to be specific and substantial public interest.[8] When the Supreme Court was required to pass thereon in Federal Trade Commission v. Raladam Co.,[9] it emphasized competition and minimized public interest, by holding there must be a finding or evidence from which the conclusion legitimately can be drawn, that the unfair methods of competition substantially injure or tend to injure the business of a competitor or of competitors generally whether legitimate or not. It is said the decision provoked serious criticism in many quarters because it left the consumer virtually unprotected by weakening if not actually nullifying the powers expressly delegated to the Commission for the protection of the public and the consumer.[10] Whether or not the criticism was justified

---

[2] Title 15 U.S.C.A. § 45.

[3] Hereinafter referred to as Commission.

[4] Title 15 U.S.C.A. § 45.

[5] Title 15 U.S.C.A. § 12.

[6] Amalgamated Utility Workers et al. v. Consolidated Edison Co. of New York, Inc., et al., 309 U.S. 261, 268, 60 S.Ct. 561, 565, 84 L.Ed. 738; Federal Trade Commission v. Klesner, 280 U.S. 19, 25,

50 S.Ct. 1, 3, 74 L.Ed. 138, 68 A.L.R. 838.

[7] 38 Stat. 719, 15 U.S.C.A. § 45.

[8] A. L. A. Schechter Poultry Corp. et al. v. United States, 295 U.S. 495, 55 S. Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947.

[9] 283 U.S. 643, 51 S.Ct. 587, 75 L.Ed. 1324, 79 A.L.R. 1191.

[10] Derenberg. Trade Mark Protection and Unfair Trading (1936) pages 172, 173.

is now immaterial because Federal Trade Commission v. Royal Milling Co. et al.[11] and Federal Trade Commission v. Algoma Lumber Co.[12] paved the way for Federal Trade Commission v. R. F. Keppel & Bro., Inc.,[13] wherein the court recognized the Commission's jurisdiction in cases of unfair trading regardless of whether or not it is the public in general or a particular class of competitors whose interest demands the suppression of the practice complained of. This recognition of public interest was approved by Congress in 1938 with the enactment of the Wheeler-Lea Act,[14] the pertinent part of which reads: "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful '. The failure to mention competition in the later phrase shows a legislative intent to remove the procedural requirement set up in the Raladam case and the Commission can now center its attention on the direct *protection of the consumer* where formerly it could protect him only indirectly through the protection of the competitor.[15]

The logic of the present trend of the law is apparent when we realize how helpless the Commission would be under the rule of the Raladam case where all the competitors in the industry were using the same practice or where the offender had a monopoly in a field which did not compete with any other field.

In this matter however, we do have competition. The record shows there are about 50 different radio manufacturers making radio sets, tubes and parts; that it is a competitive industry. Therefore, when the petitioner took an extensively advertised and well known name and placed it upon its radio receiving sets, it did so because the name had, in its opinion, certain intangible qualities which would promote sales, and we must conclude that it was selected because of contemplated advantage by lessening or otherwise injuring the business of present or potential rivals. The Commission, provided there is a specific and substantial public interest, can protect competitors against such methods or consumers against such acts or practices.

The test is whether the natural and probable result of the use by petitioner of the name "Remington" makes the average purchaser unwittingly, under ordinary conditions purchase that which he did not intend to buy. A deliberate effort to deceive is not necessary nor must the Commission find actual deception or that any competitor of petitioner has been damaged,[16] but it must find a specific and substantial public interest.[17] Various ways in which the public interest may be involved have been stated, namely, an unfair method employed under circumstances which include flagrant oppression of the weak by the strong, or when the aggregate loss entailed may be so serious and widespread as to make the matter one of public consequence and no private suit would be brought to stop the unfair conduct, since the loss to each of the individuals affected is too small to warrant it,[18] or where consumers or dealers prefer to purchase a given article because it was made by a particular manufacturer or class of manufacturers, they have a right to do so and this right cannot be satisfied by imposing upon them an exactly similar article or one equally as good but having a different origin.[19]

The result of petitioner's act or practice is that purchasers of 5800 radios from 1935 to 1939 may have been deceived into purchasing an article which they might not have bought if correctly informed as to its origin. We are of the opinion that the purchasing public is entitled to be protected against the species of deception practiced by the petitioner and that its interest in such protection is specific and substantial.

The Order of the Commission is affirmed. A decree enforcing it will be entered.

[11] 288 U.S. 212, 53 S.Ct. 335, 77 L.Ed. 706.

[12] 291 U.S. 67, 54 S.Ct. 315, 78 L.Ed. 655.

[13] 291 U.S. 304, 54 S.Ct. 423, 78 L.Ed. 814.

[14] 52 Stat. 1028, 15 U.S.C.A. § 45.

[15] 39 Columbia Law Review, 262; 53 Harvard Law Review 836, 837; Minter v. Federal Trade Commission, 3 Cir., 102 F.2d 69, 70.

[16] Federal Trade Commission v. Balme, 2 Cir., 23 F.2d 615.

[17] Federal Trade Commission v. Royal Milling Co., 288 U.S. 212, 53 S.Ct. 335, 77 L.Ed. 706.

[18] Federal Trade Commission v. Klesner, 280 U.S. 19, 50 S.Ct. 1, 74 L.Ed. 138, 68 A.L.R. 838.

[19] Federal Trade Commission v. Royal Milling Co., supra.