## AMERICAN AIRLINES, INC. v. NORTH AMERICAN AIRLINES, INC., ET AL.

No. 410. Argued March 6–7, 1956.—Decided April 23, 1956.

*Howard C. Westwood* argued the cause for petitioner. With him on the brief was *J. Randolph Wilson.*

*Walter J. Derenberg* argued the cause for North American Airlines, Inc., respondent. With him on the brief was *Hardy K. Maclay.*

*Solicitor General Sobeloff, Assistant Attorney General Barnes, Daniel M. Friedman, Franklin M. Stone, O. D. Ozment* and *Gerald F. Krassa* filed a brief for the Civil Aeronautics Board, respondent.

MR. JUSTICE MINTON delivered the opinion of the Court.

Twentieth Century Airlines, Inc., was issued a letter of registration as a large irregular air carrier by the Civil Aeronautics Board in 1947. For some reason, beginning in 1951 it conducted its business under the name of North American Airlines. On March 3, 1952, it amended its articles of incorporation so as legally to change its name to North American Airlines, Inc. By letter dated March 11, 1952, it requested the C. A. B. to reissue its letter of registration in the new corporate name. The Board took no action on that request, but rather, in August 1952, adopted an Economic Regulation requiring every irregular carrier after November 15, 1952, to do business in the name in which its letter of registration was issued. 14 CFR § 291.28. The Board explained that under the Regulation it would allow continued use of a different name to which good will had become attached, except where use of such name constitutes a violation of § 411 of the Civil Aeronautics Act, 52 Stat. 1003, as amended, 66 Stat. 628, 49 U. S. C. § 491, which prohibits unfair or deceptive commercial practices and unfair methods of competition. 17 Fed. Reg. 7809.

On October 6, 1952, respondent applied for permission to continue use of its name, "North American Airlines." Petitioner, American Airlines, on October 17, 1952, filed a memorandum with the Board requesting denial of North American's application for the reasons, among others, that use of the name "North American" infringed upon its long-established trade name, "American," and constituted an unfair method of competition in violation of § 411 of

the Act. The Board, as authorized by § 411, on its own motion instituted an investigation and hearing into whether there was a violation of § 411 by North American. It consolidated with that proceeding an investigation and hearing into the matter of North American's application for change of name in its letter of registration. American was granted leave to intervene in the consolidated proceeding.

After extensive hearings, the Board found that respondent's use of the name "North American" in the air transportation industry, in which it competed with American, had caused "substantial public confusion," which was "likely to continue" and which constituted "an unfair or deceptive practice and an unfair method of competition within the meaning of Section 411." Docket Nos. 5774 and 5928 (Nov. 4, 1953), 14–15 (mimeo). It found that the public interest required elimination of the use of the name, and accordingly it denied the application of North American and ordered it to "cease and desist from engaging in air transportation under the name 'North American Airlines, Inc.,' 'North American Airlines,' 'North American,' or any combination of the word 'American.'" *Id.,* at 15–16. On petition for review by North American, the Court of Appeals for the District of Columbia set aside the Board's order. 97 U. S. App. D. C. 85, 228 F. 2d 432. American, having been admitted as a party below by intervention, sought, and we granted, certiorari. 350 U. S. 894.

As we understand its opinion, the Court of Appeals set aside the order because the public interest in this proceeding was inadequate to justify exercise of the Board's jurisdiction under § 411. Although the court was critical of the finding of "substantial public confusion," it did not, on its disposition of the case, expressly disturb that or any other of the Board's findings. For the purposes of review here, we will accept the findings, and there is no cause

for this Court to review the evidence. *Universal Camera Corp.* v. *Labor Board,* 340 U. S. 474, has no application in the present posture of the case before us. The questions then presented are whether confusion between the parties' trade names justified a proceeding by the Board to protect the public and whether the kind of confusion found by the Board could support a conclusion of a violation of the statute by respondent.

This is a case of first impression under § 411. That section provides that

"The Board may, upon its own initiative or upon complaint . . . if it considers that such action by it would be in the interest of the public, investigate and determine whether any air carrier . . . has been or is engaged in unfair or deceptive practices or unfair methods of competition in air transportation or the sale thereof."

If the Board finds that the carrier is so engaged, "it shall order such air carrier . . . to cease and desist from such practices or methods of competition." Section 411 was modeled closely after § 5 of the Federal Trade Commission Act,* which similarly prohibits "unfair methods of competition in commerce, and unfair or deceptive acts or practices" and provides for issuance of a complaint "if it shall appear to the Commission that a proceeding by it . . . would be to the interest of the public." 38 Stat. 719, as amended, 15 U. S. C. § 45. We may profitably look to judicial interpretation of § 5 as an aid in the resolution of the questions raised here under § 411.

---

*See Hearings before a Subcommittee of the Senate Committee on Interstate Commerce on S. 3659, 75th Cong., 3d Sess. 5; 83 Cong. Rec. 6726; Hearings before a Subcommittee of the Senate Committee on Interstate Commerce on S. 2 and S. 1760, 75th Cong., 1st Sess., Pt. 1, 74.

It should be noted at the outset that a finding as to the "interest of the public" under both § 411 and § 5 is not a prerequisite to the issuance of a cease and desist order as such. Rather, consideration of the public interest is made a condition upon the assumption of jurisdiction by the agency to investigate trade practices and methods of competition and determine whether or not they are unfair. Thus, this Court has held that, under § 5, the Federal Trade Commission may not employ its powers to vindicate private rights and that whether or not the facts, on complaint or as developed, show the public interest to be sufficiently "specific and substantial" to authorize a proceeding by the Commission is a question subject to judicial review. *Federal Trade Comm'n* v. *Klesner*, 280 U. S. 19. See also *Federal Trade Comm'n* v. *Keppel & Bro., Inc.*, 291 U. S. 304; *Federal Trade Comm'n* v. *Royal Milling Co.*, 288 U. S. 212.

In the *Klesner* case, two District of Columbia retailers, with a long history of acrimonious personal and business relations, were both operating stores called the "Shade Shop." This Court held that the public interest merely in resolving their private unfair competition dispute would not justify the Commission in issuing a complaint. The courts of law are open to competitors for the settlement of their private legal rights, one against the other. The Board, under a mandate from Congress, is charged with the protection of the public interest as affected by practices of carriers in the field of air transportation. In exercising our function of review of the Board's jurisdiction to protect the public interest by a proceeding which may be generated from facts also giving rise to a private dispute, we must take account of the significant differences between § 5 and § 411. Section 5 is concerned with purely private business enterprises which cover the full spectrum of economic activity. On the

other hand, the air carriers here conduct their business under a regulated system of limited competition. The business so conducted is of especial and essential concern to the public, as is true of all common carriers and public utilities. Finally, Congress has committed the regulation of this industry to an administrative agency of special competence that deals only with the problems of the industry.

The practices of the competitors here clashed in a field where Congress was specifically concerned to protect the public interest. Demonstrated confusion of the public as to the origin of major air transportation services may be of obvious national public concern. The criteria which the Board employed to determine whether the confusion here created a problem of concern to the public are contained in the following quotation from its report:

> ". . . the record is convincing that the public interest requires this action in order to prevent further public confusion between respondent and intervenor due to similarity of names. The maintenance of high standards in dealing with the public is expected of common carriers, and the public has a right to be free of the inconveniences which flow from confusion between carriers engaging in the transportation of persons by air. The speed of air travel may well be diminished when passengers check in for flights with the wrong carrier, or attempt to retrieve baggage from the wrong carrier, or attempt to purchase transportation from the wrong carrier, or direct their inquiries to the wrong carrier. Friends, relatives or business associates planning to meet passengers or seeking information on delayed arrivals are subject to annoyance or worse when confused as to the carrier involved. The proper handling of complaints from members of the public is impeded

by confusion as to the carrier to whom the complaint should be presented. The transportation itself may differ from what the confused purchaser had anticipated (e. g., in terms of equipment), even though the time and place of arrival may be about the same. It is obvious that public confusion between air carriers operating between the same cities is adverse to the public interest . . . ." Docket Nos. 5774 and 5928 (Nov. 4, 1953), 12–13 (mimeo).

Under § 411 it is the Board that speaks in the public interest. We do not sit to determine independently what is the public interest in matters of this kind, committed as they are to the judgment of the Board. We decide only whether, in determining what is the public interest, the Board has stayed within its jurisdiction and applied criteria appropriate to that determination. The Board has done that in the instant case. Considerations of the high standards required of common carriers in dealing with the public, convenience of the traveling public, speed and efficiency in air transport, and protection of reliance on a carrier's equipment are all criteria which the Board in its judgment may properly employ to determine whether the public interest justifies use of its powers under § 411.

It is argued that respondent's use of the name "North American" cannot amount to an unfair or deceptive practice or an unfair method of competition authorizing the Board's order within § 411. "Unfair or deceptive practices or unfair methods of competition," as used in § 411, are broader concepts than the common-law idea of unfair competition. See *Federal Trade Comm'n* v. *Keppel & Bro., Inc., supra; Federal Trade Comm'n* v. *Raladam Co.,* 283 U. S. 643, 648. The section is concerned not with punishment of wrongdoing or protection of injured competitors, but rather with protection of the public interest. See *Federal Trade Comm'n* v. *Klesner, supra,* at 27–28.

The courts have held, in construing § 5 of the Trade Commission Act, that the use of a trade name that is similar to that of a competitor, which has the capacity to confuse or deceive the public, may be prohibited by the Commission. *Federal Trade Comm'n* v. *Algoma Lumber Co.*, 291 U. S. 67; *Juvenile Shoe Co.* v. *Federal Trade Comm'n*, 289 F. 57. And see *Pep Boys—Manny, Moe & Jack, Inc.* v. *Federal Trade Comm'n*, 122 F. 2d 158, where the confusing name was not that of any competitor. The Board found that respondent knowingly adopted a trade name that might well cause confusion. But it made no findings that the use of the name was intentionally deceptive or fraudulent or that the competitor, American Airlines, was injured thereby. Such findings are not required of the Trade Commission under § 5, and there is no reason to require them of the Civil Aeronautics Board under § 411. *Federal Trade Comm'n* v. *Algoma Lumber Co.*, *supra*, at 81; *Eugene Dietzgen Co.* v. *Federal Trade Comm'n*, 142 F. 2d 321, 327; *D. D. D. Corp.* v. *Federal Trade Comm'n*, 125 F. 2d 679, 682; *Gimbel Bros., Inc.* v. *Federal Trade Comm'n*, 116 F. 2d 578, 579; *Federal Trade Comm'n* v. *Balme*, 23 F. 2d 615, 621. See also S. Rep. No. 221, 75th Cong., 1st Sess. 2.

The Board had jurisdiction to inquire into the methods of competition presented here, and its evidentiary findings concerned confusion of the type which can support a finding of violation of § 411. The judgment of the Court of Appeals must therefore be reversed. However, since we do not understand the court to have decided whether the Board's findings were supported by substantial evidence on the record as a whole, the case is remanded to the Court of Appeals for further proceedings in the light of this opinion.

*Reversed and remanded.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE REED concurs, dissenting.

The Court decides that a finding of "substantial public confusion" resulting from respondent carrier's use of the name "North American" constitutes a violation of § 411 of the Civil Aeronautics Act, 52 Stat. 1003, as amended, 66 Stat. 628, 49 U. S. C. § 491.

If the Court held that the public confusion must be substantial enough to impair—or imminently threaten to impair—the efficiency of air service, I would agree. That construction would give practical content to the phrase "substantial public confusion." The Court, however, does not require a Board finding that the confusion has diminished the efficiency of air service. There is, indeed, no such finding by the Board in this case. There is only a naked finding of "substantial public confusion" and that such confusion is "likely to continue." There is no finding that any flight was delayed because a passenger was confused; there is no finding that any passenger missed his plane because of checking in at the wrong ticket counter; there is no finding that a confused passenger boarded the wrong plane.

The Board conceded that its order requiring respondent to cease and desist from using the name "North American" was "a serious sanction which necessarily involves disturbance and loss to the carrier. . . . The maintenance of high standards in dealing with the public is expected of common carriers, and the public has a right to be free of the inconveniences which flow from confusion between carriers engaging in the transportation of persons by air. The speed of air travel *may well be diminished* when passengers check in for flights with the wrong carrier, or attempt to retrieve baggage from the wrong carrier, or attempt to purchase transportation from the wrong car-

rier, or direct their inquiries to the wrong carrier." Docket Nos. 5774 and 5928 (Nov. 4, 1953), 12–13 (mimeo). (Italics added.)

I would not permit the Board to find a violation of § 411 so easily. We should require a finding that the confusion has actually caused some impairment of air service or that at least there is an imminent threat of such impairment. Certainly the type of confusion found here "may well" diminish the speed of air travel—*if* it grows to such major proportions that flights are delayed and passengers begin missing flights or boarding the wrong planes. But it is mere conjecture that that will ever happen as a result of respondent's use of the name "North American." The type and extent of public confusion found by the Board here would probably also be found if the Board conducted a similar inquiry into passenger confusion between Pan-American and American Airlines. It would also be surprising if the Board could not find similar confusion between Eastern and Northeast Airlines, Western and Northwest Airlines, or, if the Board had jurisdiction in the railroad industry, among Northern Pacific, Union Pacific, Western Pacific and Southern Pacific. As the dissenting member of the Board said:

"Since American Airlines, Inc., carries approximately 5½ million passengers each year over its system, I am not impressed with the fact that witnesses in this case (principally those employed by American Airlines itself) have testified that some confusion has existed between the services offered by American, on the one hand, and North American on the other. On the contrary, I would be greatly surprised, (in view of the several million phone calls and other communications which American Airlines receives every year over and above those received from passengers which it actually carries) if there were not *some* demonstrable public confusion between American

Airlines and the respondent in this case." *Id.,* at 1–2 (dissenting opinion).

The Court relies on the cases arising under § 5 of the Federal Trade Commission Act, 38 Stat. 719, as amended, 15 U. S. C. § 45. *Federal Trade Comm'n* v. *Algoma Lumber Co.,* 291 U. S. 67; *Juvenile Shoe Co.* v. *Federal Trade Comm'n,* 289 F. 57; *Pep Boys* v. *Federal Trade Comm'n,* 122 F. 2d 158. Those cases are quite different. In each the Commission made more than a bald finding of "substantial public confusion." It found, in the *Algoma Lumber* case, that a substantial number of purchasers had been misled into buying something other than what they thought they were buying. 291 U. S., at 72. In the *Juvenile Shoe* case, the competitor took a name so similar ("Juvenile Shoe Corporation" and "Juvenile Shoe Company, Inc.") that confusion in the public mind was "inevitable." 289 F., at 58. And the Commission made a finding that the use of the word "Juvenile" caused confusion and led purchasers to believe that the goods of one company were the goods of the other company. *Id.,* at 59. In the *Pep Boys* case, the court approved the following test: ". . . whether the natural and probable result of the use by petitioner of the name . . . makes the average purchaser unwittingly, under ordinary conditions purchase that which he did not intend to buy." 122 F. 2d, at 161.

There are no similar findings in the instant case. There is no finding here that a passenger bought a North American ticket and flew North American under the mistaken belief that he was flying American. There is no finding that any passenger missed a plane because of the confusion. If passengers mistakenly bought North American service, believing it to be American, a finding of unfair or deceptive practices or unfair methods of competition under § 411 would be justified. That is a type of public

confusion quite different from the confusion found in this case—reporting to the wrong ticket counter or attempting to retrieve baggage from the wrong carrier. By analogy to the § 5 cases, we have here a situation where a few prospective purchasers walked into the wrong store, but never made any purchases there.

I would affirm the judgment of the Court of Appeals.