**MONTGOMERY WARD & CO., Incorporated, Petitioner,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

**No. 15887.**

United States Court of Appeals Seventh Circuit.

June 27, 1967.

Daniel Walker, Narcisse A. Brown, John P. Brundage, Chicago, Ill., for petitioner.

J. B. Truly, Asst. Gen. Counsel, W. Risque Harper, Atty., Federal Trade Commission, Washington, D. C., James McI. Henderson, Gen. Counsel, for respondent.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KILEY, Circuit Judges.

HASTINGS, Chief Judge.

Montgomery Ward & Company, Inc. (Wards), has petitioned this court to review an order of the Federal Trade Commission requiring it to cease and desist representing that certain of its merchandise was guaranteed unless, *inter alia,* the nature and extent of the guarantees were conspicuously and clearly defined.[1]

On February 19, 1964, the Commission issued a complaint against Wards charging that while in its advertising Wards guaranteed merchandise without condition or limitation, Wards' actual guarantees for the merchandise were subject to limitations and conditions not revealed in the advertising of the guarantees. This deviation between advertised and

---

1. Montgomery Ward & Co., 3 Trade Reg. Rep. ¶ 17,635 (FTC Dkt. No. 8617, 1966).

actual guarantees was charged to constitute an unfair method of competition and unfair and deceptive practice in commerce, in violation of § 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45.[2]

At the hearing on the complaint, complaint counsel based his case entirely on the discrepancy between Wards' newspaper advertisements for specific products and the respective guarantee certificates for the products.[3] Almost all of the evidence introduced by both sides was documentary. At the conclusion of complaint counsel's case, Wards moved to dismiss, which motion was taken under advisement.

On March 29, 1965, the trial examiner granted the motion to dismiss. The dismissal was based upon the ground that there was no evidence "that any customer made any claim under any guarantee involved in this proceeding, or that [Wards] failed to satisfy any claim under any of its guarantees." From this it was concluded that the record could not support a finding that the advertisements were misleading or deceptive.

The Commission, two members dissenting, adopted the examiner's findings in part, but concluded that Wards had violated the Act. The Commission determined that the legality of Wards' practices was to be tested by their capacity to deceive and not by actual deception. The Commission rejected Wards' argument that, notwithstanding the limitations in its guarantees, it had a policy of honoring guarantees as stated in its advertisements. The Commission reasoned that a customer might purchase on the basis of the advertisement and only then learn of the guarantee limitations. In addition to the finding of deceptive advertising, the Commission found the advertising to constitute an unfair method of competition.

On this petition to review, Wards claims the complaint against it charged it with false advertising. Wards contends there was no false advertising since it always honored guarantees as advertised. Since it honored its advertising, it argues the Commission had the burden of proving that Wards' guarantees were subject to limitations and conditions and that the public was actually deceived.

Wards also contends it has an advertising policy of strict conformance to legal requirements, but that notwith-

---

2. "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful." 15 U.S.C.A. § 45(a) (1).

3. Typical of the advertised guarantees are those for rebuilt engines, which *guarantee the engines for* 90 *days or* 4000 *miles.* The written guarantees, however, read as follows:
   "FOR A PERIOD OF NINETY DAYS from date installed or four thousand miles (whichever occurs first) we warrant this rebuilt assembly for passenger car service against defects in material and factory workmanship provided our installation and operating instructions are followed. If this assembly is used in truck or commercial installation, it is warranted for thirty days only.
   "Any part of this rebuilt assembly which under such conditions fails because of defective parts or factory workmanship during the period of warranty, may be exchanged for new parts without charge, provided old parts are returned. On such failures occurring within thirty days, we will also refund reasonable labor cost. After thirty days (on passenger cars) the warranty is limited to exchange of parts only.
   "This warranty does not apply to any motor which has not been installed by Wards Authorized Installer, or customer does not return to Installer for the 500 mile check-up, or fails because of defects or inefficiency of parts or units (carburetor, air cleaner, fuel pump, etc.), not furnished with the motor. Nor does it cover motors subjected to misuse or accident, or operated under conditions causing greater than normal wear, or used for purposes for which it was not originally designed (such as in a boat, stationary power unit, etc.).
   "The obligations assumed under this warranty are in lieu of all warranties or guarantees expressed or implied.
   "This warranty is not valid unless the Certificate of Installation is properly filled in and returned to the Mail Order House or Retail Store from which motor was purchased."

standing central direction, local stores occasionally and without authorization deviate from the required practice. Such deviations are claimed to be isolated instances when viewed in the light of the magnitude of Wards' advertising operations. It is urged, therefore, that they do not constitute enough of a violation of the Act, as a matter of public interest, to require a cease and desist order.

■ On review of an order of the Commission, we are bound by a general principle of administrative law, the substantial evidence rule. If the Commission's factual findings have the support of substantial evidence, then we must accept them and consider their legal effect with the benefit of the Commission's administrative experience. F.T.C. v. Colgate-Palmolive Co., 380 U.S. 374, 385, 85 S.Ct. 1035, 13 L.Ed. 904 (1965); Niresk Industries, Inc. v. F.T.C., 7 Cir., 278 F.2d 337, 340 (1960), cert. den., 364 U.S. 883, 81 S.Ct. 173, 5 L.Ed.2d 104 (1960).

■ The trial examiner's findings and actions are, of course, entitled to consideration in appraising the Commission's findings. Universal Camera Corp. v. Labor Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

We disagree with Wards' contention that it was charged with failing to honor its advertising guarantees. It was charged with advertising unconditional guarantees, while its actual written guarantee certificates were limited. This is what was found and what Wards was ordered to cease and desist doing.

■ Wards has misread the complaint to charge it with intentionally false advertising. The charge was deceptive advertising, and whatever Wards' intentions were in the advertising, they are not controlling in the determination of its deceptiveness. Actual deception, proved by deceived consumers, is not necessary: the likelihood of deception or the capacity to deceive is the criterion by which the advertising is judged. Feil v. F.T.C., 9 Cir., 285 F.2d 879, 896

(1960); Parker Pen Co. v. Federal Trade Commission, 7 Cir., 159 F.2d 509 (1946); Charles of the Ritz Dist. Corp. v. F.T.C., 2 Cir., 143 F.2d 676 (1944).

The capacity to deceive involved in Wards' advertisements lies in the inducement to buy created by the unlimited, advertised guarantee. Wards argues strongly, however, that its demonstrated complete willingness to perform according to the advertised guarantee precludes any deception arising from a customer's purchase in reliance on an advertised guarantee.

■ A policy of honoring advertised guarantees rather than requiring a purchaser to proceed under a limited written guarantee delivered with the merchandise, if invariably communicated to the purchaser, would create a situation not now before us. There was no evidence that such a policy was communicated to Wards' purchasers. The Commission's burden of proof was merely to show that Wards' advertising in relation to the actual facts had a capacity to deceive. It met this burden through a comparison of advertised guarantees and guarantee certificates, which was proper. Western Radio Corp., CCH Trade Reg.Rep. ¶ 16,023 (1961–63 Transfer Binder), aff'd Western Radio Corporation v. F.T.C., 7 Cir., 339 F.2d 937 (1964), cert. den., 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701 (1965); Baldwin Bracelet Corp., 61 F.T.C. 1345 (1962), aff'd, Baldwin Bracelet Corporation v. Federal Trade Commission, D.C. Cir., 325 F.2d 1012 (1963), cert. den., 377 U.S. 923, 84 S.Ct. 1221, 12 L.Ed.2d 215 (1964). Having done so, and we find that a comparison between the advertised guarantees and the written guarantees supports the Commission's determination, the burden was on Wards to show that prospective customers were not deceived.

Assuming Wards has a policy of honoring guarantees as advertised, the issue is yet not one of performance, but one of advertising, of what a prospective purchaser is likely to think on the basis of the advertising alone. The

delivery of limiting guarantee certificates with the product purchased might mislead customers notwithstanding Wards' policy. Given such a certificate, customers are not likely to ignore its limitations when seeking satisfaction under its guarantee, particularly in view of the certificate language, "the obligations assumed under this warranty are in lieu of all warranties express or implied." If, on the other hand, each purchaser actually was informed that advertised guarantees would be honored, the certificates were meaningless. The Commission determination that this state of affairs disclosed that purchasers from Wards would be likely to believe they would be bound by the certificate is not unreasonable. That Wards generally intended the certificates to be meaningful is indicated by internal advertising policy directives directing copywriters to accompany promotional copy with a disclosure of guarantee terms.

■ With respect to the guarantee certificates, Wards argues that the Commission did not show that any customers receiving guarantee certificates were sold advertised products or that the advertised guarantees were not in fact honored. This argument misconceives what the Commission must find. As stated, capacity to deceive and not actual deception is the standard by which to measure the advertising. The asserted lack of connective evidence between guarantee certificates and advertised merchandise is remedied by the fact that the subpoena which required Wards to produce samples of its guarantees specified guarantees for certain merchandise *sold* by Wards during certain years. This, together with the fact that these produced certificates were not disputed to relate to the products advertised, sufficiently connects the certificates with the advertised products to permit the Commission to rely on them.

■ Wards also cannot rely, as it attempts to do, upon a general company money back guarantee policy. In addition to suffering the defects of its policy of honoring advertised guarantees,

such a defense, as the Commission argues, would make the false advertising prohibitions of the Act a nullity. Anything might then be advertised as long as unsatisfied customers were returned their money.

■ Wards argues that the Commission committed errors of law, principally in the Commission's position that it has regularly held advertised guarantees which omitted to state significant limitations deceptive, without requiring additional proof that the advertised guarantees were not honored. We have examined the principal cases, Western Radio Corporation, supra; Baldwin Bracelet Corporation, supra; Clinton Watch Company v. F.T.C., 7 Cir., 291 F.2d 838 (1961), cert. den., 368 U.S. 952, 82 S.Ct. 395, 7 L.Ed.2d 386 (1962); Parker Pen Co., supra, but are unable to say the results in them depended upon a determination that advertised guarantees were not in fact honored. While the cases may possibly be construed to read that there was evidence guarantees were not honored as advertised or that the issue was not passed upon, the controlling consideration in each case was the deceptiveness of the advertising or the marking of the product. Even with Wards' defense that it honored its advertised guarantees, the Commission was not incorrect, in centering on the issue of deceptiveness, to rely upon the cases cited.

■ Wards relies on Modern Sewing Machine Co., 49 F.T.C. 1111 (1953) and Brite Manufacturing Co., CCH Trade Reg. Rep. ¶ 16,964 (1963–65 Transfer Binder) as indicating that the Commission has decided the instant case contrary to its own precedents. While these decisions are distinguishable from the instant case, it is sufficient to resolve the issue to state that because the Commission is charged with the administration of a regulatory statute through practical application of its expertise, prior Commission decisions are not of compelling precedential value. Cf. Giant Food Inc. v. F.T.C., 116 U.S.App.D.C. 227, 322 F.2d 977, 983 (1963). See also, N.L.R.B.

v. Krieger-Ragsdale Company, Inc., 7 Cir., 379 F.2d 517 (May 25, 1967).

■ As for Wards' public interest argument, we note we have no authority to determine what is in the public interest, except negatively in the sense of insuring the Commission does not attempt to use its powers to vindicate private rights, and possibly in the case of *de minimis* activity. "We decide only whether, in determining what is in the public interest, the Board has stayed within its jurisdiction and applied criteria appropriate to that determination." American Airlines v. North American, 351 U.S. 79, 85, 76 S.Ct. 600, 605, 100 L.Ed. 953 (1956). Stokely-Van Camp, Inc. v. Federal Trade Commission, 7 Cir., 246 F.2d 458 (1957), relied on by Wards, merely holds with respect to the public interest that in that case, practices obviously abandoned or discontinued for a long period of time should not be subjected to a cease and desist order.

■ In general, however, abandonment of a deceptive practice does not render a cease and desist order improper. The propriety of the order is within the sound discretion of the Commission. Benrus Watch Co. v. F.T.C., 8 Cir., 352 F.2d 313, 322 (1965), cert. den., 384 U.S. 939, 86 S.Ct. 1457, 16 L.Ed.2d 538 (1966), and cases cited there. Even if the deceptive advertising involved in this case was against Wards' policy, and was essentially the result of local deviations from Company practice, we cannot say the Commission order is an unreasonable one, in view of the necessity that the practice be stopped, notwithstanding Wards' policing difficulties. We do not find Wards' other contentions in this respect significant. Voluntary discontinuance of a practice does not prohibit issuance of a cease and desist order, which operates prospectively. Clinton Watch Company, supra, 291 F.2d at 841 (1961).

■ The Commission's finding that Wards' advertisements constituted unfair methods of competition is dependent upon its finding that Wards' advertising was deceptive. We agree that a company using deceptive advertising, intentionally or not, which other companies complying with the Act do not use, has an unfair advantage over its competitors. Since we have held the Commission's conclusions with respect to Wards' advertising were justified, we also hold the unfair competition finding proper.

We are not unmindful of the legitimate claim made by Wards that its guiding principle since 1872 has been "Satisfaction guaranteed or your money back." We are impressed by the showing it is a giant corporation and operates under a company policy of truthful advertising. It is quite clear, in view of the size and complexity of its total merchandising operation, that there will be deviations from company policy by local store employees. Further, we have no reason to doubt Wards' claim that it would honor its unconditional guarantee even though it conflicts with its conditional guarantee certificate accompanying the merchandise sold.

However, having fully credited Wards with having corporate integrity and a company policy of truthful advertising, the fact remains, as the Commission found, this could not cure "the capacity to deceive inherent in attaching specific and limited guarantees to products which are then advertised without limitation." We share the Commission's "doubt that none but the most aggressive and sophisticated customers will either recall or retain the advertisement which originally led them to consider the purchase, nor will the average customer persist in his demands that Wards disregard the specific guarantee certificate and honor claims under the broader guarantee originally advertised."

We have carefully considered the several contentions urged by Wards. Under the record before us and consistent with what we believe are applicable legal criteria, we are compelled to the conclusion that the Commission's factual findings are supported by substantial

evidence and that the Commission's order should be affirmed.

The cease and desist order under review will be enforced.

Order enforced.