264 So.2d 35 (1972)
JET AIR FREIGHT, a California Corporation, Appellant,
v.
JET AIR FREIGHT DELIVERY, INC., a Florida Corporation and Jet Air Freight, Inc., a Florida Corporation, Appellee.
No. 71-1022.
District Court of Appeal of Florida, Third District.
June 13, 1972.
Rehearing Denied July 7, 1972.
*36 Smathers & Thompson and Linwood Anderson, Miami, for appellant.
Fromberg, Fromberg & Roth, Miami, for appellee.
Before BARKDULL, C.J., and PEARSON and HENDRY, JJ.
PER CURIAM.
Jet Air Freight Delivery, Inc., and its wholly owned subsidiary, Jet Air Freight, Inc., both freight cartage companies, brought suit in the Circuit Court of Dade County, to enjoin the defendant, Jet Air Freight, an air freight forwarder, licensed by the Civil Aeronautics Board, from using the name Jet Air Freight in Dade and Broward Counties, Florida. Appellant-defendant seeks review of the final judgment and amended final judgment; appellee-plaintiff has filed a cross-appeal from the amended final judgment.
A firm which assembles and ships air freight is called an "air freight forwarder" and is sometimes described as an "indirect air carrier." Airborne Freight Corporation v. Civil Aeronautics Board, 103 U.S. App.D.C. 206, 257 F.2d 210, 211 (1958). The federal regulations state in 14 C.F.R. § 296.2 (1971):
"There is hereby established a classification of air carriers, having the attributes of, and which are designated as, `indirect air carriers'. Such classification shall include the following sub-classifications:
"(a) `Air Freight Forwarder' means any indirect air carrier which, in the ordinary and usual course of its undertaking, assembles and consolidates or provides for assembling and consolidating such property or performs or provides for the performance of break-bulk and distributing operations with respect to consolidated shipments, and is responsible for the transportation of property from the point of receipt to point of destination and utilizes for the whole or any part of such transportation the services of a direct air carrier."
A freight cartage company is essentially a trucking business performing a pick up and *37 delivery service. It appears that the plaintiff is licensed by the Florida Public Service Commission.
Appellant-defendant, Jet Air Freight filed its answer denying appellee-plaintiffs' allegations for relief. It also filed a counter-claim against the appellee-plaintiffs asking for damages and that they be enjoined from using the name Jet Air Freight.
Upon trial of all the issues the trial judge made findings of fact and adjudicated the issues, all of which were set forth or incorporated by reference in the amended final judgment. The findings of fact which are incorporated in the amended final judgment by reference are summarized below.
Plaintiffs Jet Air Freight Delivery, Inc. (incorporated in Florida in 1960) and its wholly owned subsidiary Jet Air Freight, Inc. (formed in Florida in 1969) have done business in Florida continuously, exclusively as air freight cartage agents. They have acted for many air freight forwarders and the general public directly.
Plaintiffs refer to themselves as Jet Air Freight (except for telephone listings under the parent's name). They registered the fictitious name of Jet Air Freight in Dade and Broward Counties in 1969. Plaintiffs developed a substantial cartage business and excellent business reputation, as several witnesses testified. They became known throughout the trade and industry as Jet Air Freight.
Until 1969 defendant had no identity in Florida; it did not advertise or attempt to solicit business in Florida. It incorporated in California in 1959 as Jet Transportation, Inc. but changed its name to Jet Air Freight in 1967. Defendant is a nation-wide air freight forwarder which can and does perform the services of an air freight cartage agent. It first purchased cargo space on airlines destined for Miami in 1960, simply shipping cargo on air waybills with Jet Air Freight Delivery as consignee. Initially its Miami shipments were insignificant, and defendant utilized exclusively the cartage services of the plaintiffs. This arrangement lasted from 1960 until October, 1970, when defendant decided to perform its own cartage services here.
In June, 1969 defendant first attempted to register with the Florida Secretary of State to do business here as Jet Air Freight. Permission was denied apparently due to the similarity of these parties' names.
Nonetheless, defendant in September, 1969, first obtained a listing in the yellow and white pages of the local telephone directory as Jet Air Freight. This listing appeared directly above the Plaintiffs'. The same is true for the 1970 directories. Defendant, without obtaining any occupational licenses, also began and still is advertising and soliciting business under the name Jet Air Freight in Dade County.
The revenues defendant earns from performing its own cartage services throughout the country constitutes a small portion of its overall revenues, and Florida cartage revenues are only a minor portion of its total cartage revenues. Over the years, defendant acquired companies performing cartage services, which are now wholly owned subsidiaries. Defendant utilizes these subsidiaries and independent cartage agents, to perform some of its cartage work in various parts of the country. Defendant could use any of these corporations, or form a new corporation, to do its cartage work in Florida. However, it would prefer to use its own corporate name.
Presently, defendant competes directly with the plaintiffs for cartage business in Dade and Broward Counties. Since defendant can service plaintiffs' customers (even though defendant also acts as a freight forwarder) any solicitation or advertising by the defendant under the name Jet Air Freight can only hurt the plaintiffs' business. The defendant has a nation-wide vertically integrated operation as *38 opposed to the plaintiffs' local family-owned horizontal operation.
Until 1969, the name Jet Air Freight was identified only with the plaintiffs, who developed an excellent business reputation, in Florida.
In 1969, plaintiffs' business was damaged as a result of the defendant's decision to perform its own cartage services under its own similar name and to list itself in the Greater Miami telephone directories, due to confusion and mix-ups. Testimony showed instances where shipments consigned to plaintiffs came into defendant's possession, and that it took several days to rectify the situation, resulting in a serious delay. Since the cartage business is highly competitive, this type of delay could result in the loss of a customer. Also, other freight forwarders, for whom plaintiffs performed cartage services, were deeply concerned about the similarity in names because they were competitors of the defendant. If the competing freight forwarders' shipments wound up in the defendant's hands, defendant could see who their customers were and solicit them. Plaintiffs would lose substantial revenues if any of its forwarders decided to use another cartage agent because of such confusion.
In addition, mail deliveries were mixed up, even when a post office box was used. Testimony further showed that plaintiffs would be forced out of business if defendant continued to be allowed to use the name Jet Air Freight in Dade and Broward counties. (The record contains no testimony that either party was presently doing business in any other part of Florida).
The lower court concluded that the plaintiffs have, over the years, used, developed and become identified by the trade name Jet Air Freight. The plaintiffs appropriated said name in Dade and Broward Counties approximately nine years prior to the defendant. Substantial confusion and turmoil and likelihood of additional confusion has resulted from the defendant's decision to advertise and solicit business under the name Jet Air Freight. If defendant is allowed to continue to use that name in Dade and Broward counties, plaintiffs will suffer grievous financial injuries. The same confusion would result even if the plaintiffs used the name Jet Air Freight Delivery, Inc. or Jet Freight, Inc. because of the similarity of the names.
See: 14 C.F.R. §§ 215.1-215.4 (1971).
The amended final judgment in pertinent part states:
"In addition, upon rehearing the Court is of the opinion that it is required by virtue of the operating authority issued to the defendant by the Civil Aeronautics Board under the name JET AIR FREIGHT to allow said defendant to carry out its interstate forwarding business, exclusive of local pickup and delivery services attendant thereto:"
"It is accordingly ORDERED AND ADJUDGED as follows:
"1. The Court finds that the equities are with the Plaintiffs and against the Defendant.
"2. The Plaintiffs are entitled to use the name JET AIR FREIGHT and the initials JAF as well as their corporate names for any and all business purposes in Dade County and Broward County, Florida. This includes, but is not limited to, advertisements, signs, solicitations, public relations and the white and yellow (regular and classified) pages of the telephone directories.
"3. The Defendant is hereby enjoined from using directly or indirectly the name JET AIR FREIGHT or the initials JAF for any business activity in Dade County or Broward County, Florida. However, this does not preclude the defendant from transporting freight into or out of Dade and Broward Counties under their own airbill stock with the name JET AIR FREIGHT imprinted thereon, nor is the Defendant precluded *39 from showing JET AIR FREIGHT as the shipper on inbound freight or as the consignee on outbound freight on airline airbills covering its consolidations as a forwarder. However, once a shipment arrives in Dade or Broward Counties, the name JET AIR FREIGHT (unless it refers to the Plaintiffs) cannot be used by the Defendant in connection with any pickup or delivery services to or from the airports and the Defendant cannot use the name JET AIR FREIGHT as the named consignee on inbound consolidation airline airbills.
"4. Not in any way limiting the foregoing, the Defendant is further enjoined from using directly or indirectly the name JET AIR FREIGHT or the initials JAF in Dade County and Broward County, Florida on any advertisements or business solicitations including but not limited to the white and yellow pages of the telephone directories, trucks, uniforms, business cards or signs.
"5. The Defendant is hereby permitted and limited to use of the name JET AIR FREIGHT FORWARDER in advertising and holding out its services as a freight forwarder to the public in Dade and Broward Counties, including but not limited to the white and yellow pages of the telephone directories, uniforms, business cards or signs; but said advertising shall not refer to pickup and delivery services. The Defendant is enjoined from using said name or any other name including the words JET AIR FREIGHT on any trucks operating in Dade or Broward Counties or to perform pickup and delivery service under said name; provided, however, that this does not preclude the defendant from providing or advertising pickup and delivery services under any other name it may select. The Defendant may use the name JET AIR FREIGHT FORWARDER as the consignee or shipper on airline consolidation airbills.
"6. Plaintiffs, of course, being Florida corporations, can use their corporate names throughout the State of Florida. However, with regard to the name JET AIR FREIGHT, the Court has made no determination as to the right of either party to use said name outside of Dade and Broward Counties since said issues were not raised at the trial.
"7. Defendant will have thirty (30) days from the date of this order within which to comply.
"8. The Court retains and reserves jurisdiction over this matter.
"DONE AND ORDERED in Chambers at Miami, Dade County, Florida, this 16 day of August, 1971."
Defendant contends that the trial court erred in the entry of its amended final judgment in that it nullifies and contravenes an operating authorization issued by a federal regulatory agency.
As we read defendant's contention on this point, two issues are involved. The first relates to primary jurisdiction and the second to res judicata or collateral estoppel. Concerning primary jurisdiction, at oral argument we explored whether the issue of primary jurisdiction had been raised in the trial court and whether it had been argued on appeal. Our review of the record and briefs satisfies us that the issue was sufficiently raised. Two contrasting lines of cases on this point emerge. In American Airlines, Incorporated v. North American Airlines (1956), 351 U.S. 79, 85-86, 76 S.Ct. 600, 100 L.Ed. 953, 962, the Supreme Court reversed the U.S. Court of Appeals for the District of Columbia Circuit; the circuit court had set aside an order of the Civil Aeronautics Board requiring North American Air Lines, Incorporated to cease and desist from operating under any name containing any combination of the word "American." That suit involved an order under § 411 of the Civil Aeronautics Act, 52 Stat. 1003, as amended 66 Stat. 628, which prohibited unfair or deceptive commercial practices and unfair methods of competition. In Allied Air *40 Freight, Inc. v. Pan American World Airways, Inc., 393 F.2d 441 (2nd Cir.1968) cert. den. 1968, 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117, the circuit court reversed a dismissal and vacated the stay entered by the federal district court in an action seeking damages for anti-trust violations. At page 448, Chief Judge Lumbard determined: "In this case the Board is unable to give the relief which appellant seeks. It has no power to award damages for unfair competitive practices." [Cites deleted.]
It is our view that in practical effect the case presently under review falls within the statement quoted above by Chief Judge Lumbard. That is, the effect of a state circuit court decision would be binding upon both parties, but an order of the Civil Aeronautics Board would have to be enforced subsequently, in either state or federal court. See generally: 3 Davis, Administrative Law § 1902, p. 13, n. 38 and § 1906 p. 33 (1958).
The second issue concerns the applicability of res judicata or collateral estoppel in administrative determinations. Where an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it, as to which parties have had an adequate opportunity to litigate, the court will apply res judicata or collateral estoppel to enforce repose. Metropolitan Dade County Board of County Commissioners v. Rockmatt Corporation, Fla.App. 1970, 231 So.2d 41; Rubin v. Sanford, Fla.App. 1964, 168 So.2d 774; Carol City Utilities, Inc. v. Miami Gardens Shopping Plaza, Inc., Fla.App. 1964, 165 So.2d 199; see also United States v. Utah Construction & Mining Co. (1966), 384 U.S. 394, 421-422, 86 S.Ct. 1545, 1559-1560, 16 L.Ed.2d 642, 660-661 and 2 Davis, Administrative Law, Ch. 18 (1958 and 1970 suppl.) The Board did not conclude this matter, as set out below.
Having disposed of these preliminary matters, we now examine the gist of the appellant's contention relating to the Civil Aeronautics Board license. To begin with, freight forwarders do not operate under a Civil Aeronautics Board certificate of public convenience and necessity, but under an operating authorization. As to certificates, see: 49 U.S.C.A. § 1371; as to authorizations, see: 49 U.S.C.A. §§ 1386, 1387, 1655 (d), and 1657(f), (g); see also: American Airlines v. Civil Aeronautics Board, 178 F.2d 903 (7th Cir.1949); National Air Freight Forwarding Corp. v. Civil Aeronautics Board, 90 U.S.App.D.C. 330, 197 F.2d 384 (1952). The Civil Aeronautics Board was authorized under 49 U.S.C.A. §§ 1378-1379 and 1381-1387 to supervise and regulate competition among air carriers. It is arguable therefore, that freight forwarders, which are defined as indirect air carriers, do not fall within the full scope of supervision and regulation by the Civil Aeronautics Board.
Repeal of statutes by implication are not favored. In this setting we cannot find an implied repeal of the federal copyright law or the common law of trade names by the passage of federal aviation laws, Title 17 U.S.C.A. and 49 U.S.C.A. §§ 1301 et seq.
Specifically, we conclude that the instant case is governed by the law applied in these cases: Carling Brewing Co., v. Philip Morris, Inc., 277 F. Supp. 326 (N.D.Ga. 1967); Standard Accident Insurance Co. v. Standard Surety & Casualty Co. of New York, 53 F.2d 119, 121 (S.D.N.Y. 1931). In the Standard Accident Insurance Co. case, supra, at p. 121, the court states:
"The defendant, on the other hand, proved that the insurance commissioners in the forty-three states where it applied for licenses under its present name unanimously granted them notwithstanding the plaintiff had previously been granted a license in each of the states. There were thus uniform rulings by the forty-three insurance departments that the two names were not so similar as to result in unfair competition. In several of the states the rulings were made over the active opposition of the plaintiff. While *41 these determinations are of course not binding on the court, they are of weight because they express the opinion of disinterested public officers whose duty it was to prevent the alleged wrong, and who, presumably, were familiar with the business."
See generally: 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 212, pp. 600-602.
Next, defendant contends that irrespective of the Civil Aeronautics Board regulations, it would be entitled to the exclusive use of the name "Jet Air Freight" under the law of tradenames. In Junior Food Stores of West Florida, Inc. v. Jr. Food Stores, Inc., Fla. 1969, 226 So.2d 393, 396, Mr. Justice Vassar B. Carlton, on a petition for rehearing in a case dealing with common law tradename protection, explained:
"Under the common law, the universal rule governing tradename protection is that protection will be extended to the first appropriator of a name, within the territorial scope of its business, against subsequent use of the same or a similar name by another. [numerous citations omitted] There can be no question about the fact that the respondent was first to use the tradename `Jr. Food Store.' Respondent's prior registration establishes that. However, prior registration does not supply the answer to the question next to be asked: `What is the territorial scope of the business to be protected?'
"Two elements need to be considered in regard to this question: first, what is the territorial scope of respondent's business; second, at what point in time are the limits of the scope to be determined . .. . Respondent's zone of territorial protection is determined by the nature of respondent's business. * * *" (Bracketed material added.)
As to the second element, at p. 398, the court decided that the point in time at which the limits to territorial protection are determined depends upon the facts of each case. In an unfair competition case, in which "Food Fair" was both a trade name and also a registered trade mark for certain packaged dairy items of the appellant, the court observed, in sustaining the injunction entered against appellant, that: "There is no doubt that the injunction will create a serious operating problem for appellant. But appellant itself provoked this result when it sought to enter an area in which, as it plainly knew, the words `Food Fair' had already become associated with another enterprise," (footnote omitted). Food Fair Stores, Inc. v. Square Deal Market Co., Inc., 93 U.S.App.D.C. 7, 206 F.2d 482 (1953), cert. den. (1954), 346 U.S. 937, 74 S.Ct. 377, 98 L.Ed. 426.
Defendant has appealed from the amended final judgment and plaintiffs have cross-appealed from the provisions therein that allows the appellees to solicit freight forwarding business in Dade and Broward Counties. There is no merit in defendants' contention that plaintiffs while acting as agent for defendant appropriated the name of defendant. We likewise find plaintiffs' cross-appeal to be without merit.
For the reasons stated, the amended judgment appealed is affirmed.
Affirmed.
BARKDULL, Chief Judge (concurring in part; dissenting in part).
I concur with the majority opinion insofar as it disposes of the error urged by the appellant. However, I dissent from the portion of the opinion which affirms the amended final judgment under attack by the cross-appeal on behalf of the appellee. I would reverse the amended final judgment, with directions to reinstate the original final judgment and its injunctive features.