OVERTON, Justice,
dissenting.
I dissent. This is a petition to review an order of the Florida Public Service Commission changing the fuel adjustment clause procedure for electric utilities, effective April 1, 1980. The public counsel seeks review of Order No. 9306, questioning not the change in method of computation but the legality of the two-month transition adjustment. This adjustment awarded the affected utilities the amounts that would have been collected in April and May under the former system, and the public counsel asserts that with this adjustment the companies are recovering twice for these two months. From my review of the record, I find the utilities failed to produce sufficient evidence to show they are entitled to this two-month transition adjustment. In fact, the record in its present state indicates the adjustment may result in a double recovery. I would remand Order No. 9306 to the commission for a hearing and determination of that sole issue.
The controversy in this case concerns the nature of the fuel adjustment clause, also known as the fuel cost recovery clause. By either name, it is intended to eliminate the difference between the actual cost of fuel for an electric utility and the amount allocated for fuel in the utility’s current general rate structure. Recent years have seen a steady increase in the amount of the fuel adjustments because of rising fuel costs. The adjustment mechanism, however, is designed also to produce credits for consumers should fuel costs decrease.
The fuel adjustment clause is not new and has been used by Florida utilities since at least 1925, well before the commission acquired jurisdiction in 1951. The record before us does not set forth the full history of the fuel adjustment clause since 1951, but it is clear that the commission has authorized over the years fuel adjustments based upon average cost test periods of six months, then one month, and now six months again. There was no problem, apparently, when the utilities switched from using a six-month average fuel cost period to a one-month test period, but the recent return to six months has produced a claim from the utilities that the adjustments have always been two months behind in collecting for fuel expenses already incurred. They have requested authority to recapture those two months fuel costs — a claim accepted by the commission but opposed by the public counsel.
The issue is really whether, by the application of the previous orders: (1) only a pricing mechanism was established and there has historically always been a fuel cost recovery for every month, or (2) the utilities are two months behind in collecting their fuel costs.
The history of the adjustment clause, as reflected by the record, is inconclusive. In Order No. 5901, the commission approved a 1973 request by Florida Power Corporation “to immediately revise its fuel adjustment clause to provide for calculating the fuel adjustment on the basis of a one-month average as. opposed to the six months now required in order to more quickly reflect changes in its cost of fuel.” (Emphasis *1334 added.) The order enunciates the commission position as to the nature of the one-month costing period in unmistakable terms:
The Company’s current fuel adjustment clause was prescribed by this Commission in Docket No. 71370-EU, Order No. 5619, on December 29, 1972, and requires that the fuel adjustment be based on the average fuel costs for the six months’ period ending the second month preceding the billing period. The only change proposed by the Company is that the costing base shall be the second month preceding the billing period. The record herein discloses that in most jurisdictions a large majority of electric utilities are permitted to use a similar costing base as that proposed by the Company in this proceeding.

. . . While it appears very unlikely that there will be any major reductions in the cost of fuel oil in the near future, the Company’s current and proposed fuel adjustment clause do provide for passing any reductions on to the customer. The one-month average costing base would more quickly pass any such reductions on to the customer than the present clause which is based on a six-months average.

NOW, THEREFORE, IN CONSIDERATION THEREOF, it is
ORDERED by the Florida Public Service Commission as follows:
1. The findings herein are approved in all respects.
2. The petition of Florida Power Corporation for authority to revise its fuel adjustment clause to provide for calculating the fuel adjustment on the basis of a one-month average as opposed to the six-months now being used is hereby granted and the Company is hereby authorized to make said revision effective on or after November 1, 1973.
Id. at 1-3 (emphasis added). While companion orders for other utilities have not been called to our attention, I must presume that the commission treated all the utilities consistently.
The record further reflects that the commission in 1974 issued Order No. 6357, which primarily concerned the procedure and legality of the fuel adjustment, already operating on a month-to-month basis for all utilities at the time of the order. The order included the following language: “The clearest example of such an incentive [for efficient and prudent management] in the existing clause is the 2 month lag feature, which operates so that a utility in November, for example, is passing on fuel costs incurred in September.” Order No. 6357 at 7.
The utilities contend that this 1974 order retained and continued a two-month billing lag placed into the fuel adjustment “pipeline” some unspecified number of years ago. Therefore, the utilities argue, they are entitled to a one-time transition adjustment to collect these additional two months of fuel costs.
Public counsel, on the other hand, says that he has no quarrel with the 1974 order and admits that there has always been a lag in data used as a pricing mechanism — but not a lag in fuel cost recovery. He argues that, whether based on fuel cost experience of the most recent month or the most recent six months, the fuel adjustment has always been intended to compensate a utility for the fuel costs incurred in the same month in which the adjustment is imposed.
It is my view that public counsel’s interpretation is consistent with basic rate-making principles. Rates for public utilities are fixed for future service rather than for past service. Gulf Power Co. v. Bevis, 289 So.2d 401 (Fla.1974). Past service costs are used as a pricing mechanism to compute present costs. Although expenses may be based upon historic test periods rather than projected test periods, it has long been settled that the commission lacks the authority to engage in retroactive ratemaking with respect to electric utilities. City of Miami v. Florida Public Service Commission, 208 So.2d 249 (Fla.1968).
The record reflects that it was also the position of the commission’s staff account *1335 ing supervisor for the electric industry that the effect of the 1974 order was to allow the utilities an opportunity to recover their fuel costs for each month in the past and that no transition adjustment was needed. The testimony of the accounting supervisor is consistent with an interpretation of the 1974 order of providing a customary pricing mechanism, as contended by public counsel.
Rather than addressing directly the issue of exactly when and how the contested nature of the adjustment clause was established, the utilities in this proceeding contend that public counsel is now asserting a collateral attack upon Order No. 6357 issued in 1974, which is prohibited by either the doctrine of administrative finality, Austin Tupler Trucking, Inc. v. Hawkins, 377 So.2d 679 (Fla.1979); Peoples Gas System, Inc. v. Mason, 187 So.2d 335 (Fla.1966), or the doctrines of collateral estoppel and res judica-ta, Jet Air Freight v. Jet Air Freight Delivery, Inc., 264 So.2d 35 (Fla. 3d DCA), cert. denied, 267 So.2d 833 (Fla.1972).
The utilities further contend that the arguments of public counsel are without merit because the findings and determinations of the commission are presumed to be valid and reasonable, absent clear and convincing showing to the contrary, City of Miami v. Florida Public Service Commission, 208 So.2d 249 (Fla.1968), and that it is not this Court’s responsibility to reweigh or reevaluate conflicting evidence, but only to ascertain whether the commission’s order is supported by competent, substantial evidence. Jacksonville Suburban Utilities Corp. v. Hawkins, 380 So.2d 425 (Fla.1980).
I find there is clearly no substantial competent evidence in this record to allow a two-month transition adjustment recovery for the utilities.
I would not reach the question of whether the commission lacked authority to change the nature of the fuel adjustment. The instant record is wholly inadequate to determine what the commission did between Order No. 5901 and Order No. 6357, let alone its authority to do so. If the commission was attempting in Order No. 6357 to change from a former position of traditional ratemaking which uses a test month or months as a pricing mechanism to a dramatically new position of retroactive recapture of costs under the one-month costing period, one would expect to see at least an admission of such a change in the order. I recognize the quoted portion of the order could be construed to reflect such a change, but it can also be construed as nothing more than a description of the practical nature of the adjustment. In any event, this issue was not the specific focus of the order. The testimony of the commission’s own accounting staff reflects that the staff had not construed the order to mean such a dramatic change. I conclude that this Court should reject the assertions of the presumption of correctness of commission findings and the need for finality of action. In reaching this conclusion, I have reviewed the record in the light most favorable to the utilities and at best it simply establishes unexplained deviations in the commission perspective over the years.
I recognize that substantial sums of money are at issue. While the commission has the duty under section 366.06(2), Florida Statutes (1979), to “determine the actual legitimate costs of the property of each utility company,” the commission may not authorize the reimbursement for expenses already charged to, and paid by, consumers. I am unable to determine from this record whether the transition computation results in a double recovery or in a recovery of costs not previously recouped. The burden before the commission was on the utilities to establish by competent substantial evidence the need to recapture these two months of fuel adjustments. I find the evidence to be insufficient upon that issue, principally because the utilities presumed rather than proved there would be no double recovery.
I would remand this cause under section 120.68(12), Florida Statutes (1979), to the commission for further proceedings to ensure that consumers are not subjected to double payments.